UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EARL GEE,

Petitioner,

Case No. 1:18-cv-1375

v.

Honorable Paul L. Maloney

CONNIE HORTON,

Respondent.
______________________________/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Earl Gee is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a bench trial in the Muskegon County Circuit Court, Petitioner was convicted on four counts: (1) possession of a firearm by a felon (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f; (2) open murder, in violation of Mich. Comp. Laws § 750.316; and (3) two counts of felony firearm, in violation of Mich. Comp. Laws § 750.227b. On March 18, 2015, the court sentenced Petitioner, as a fourth habitual offender, in violation of Mich. Comp. Laws § 769.12, to respective prison terms of (1) 1 to 10 years on the felon-in-possession charge; (2) life on the open murder charge; and (3) 2 years on each felony firearm charge.

On December 11, 2018, Petitioner, though counsel, filed his habeas corpus petition. The petition raises two grounds for relief, as follows:

I. PETITIONER WAS DENIED A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FEDERAL CONSTITUTION WHERE, PRIOR TO TRIAL, PETITIONER WAS MISLED INTO WAIVING HIS RIGHT TO A JURY TRIAL, WHICH

CREATED AN UNKNOWING AND INVOLUNTARY WAIVER OF THE RIGHT TO A JURY TRIAL.

II. PETITIONER WAS DENIED A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FEDERAL CONSTITUTION WHERE TRIAL COUNSEL FAILED TO INVESTIGATE AND PRESENT A SUBSTANTIAL DEFENSE, AND ALSO DID NOT ADVISE PETITIONER TO TESTIFY, WHERE HIS TESTIMONY WAS THE ONLY EVIDENCE THAT WOULD HAVE ESTABLISHED THAT HE WAS NOT THE SHOOTER.

(Pet., ECF No. 1, PageID.2.) Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

Petitioner's case was heard by a judge in a four-day trial held February 19, 20, 25, and 26, 2015. The following factual summary is taken from the opinion issued by the Michigan Court of Appeals:

> This case arises out of the shooting death of Jacob Marc Rameau in the early morning of June 26, 2014, in Muskegon Heights. Rameau was shot while pursuing a stolen vehicle that belonged to his brother, Christopher Hotz. Rameau and Hotz had been socializing at DJ's Pub and emerged from the bar shortly after 1:00 a.m. to witness Hotz's 1991 Dodge Dynasty being driven away unlawfully. Rameau pursued the stolen car on his motorcycle.
>
> According to testimony at trial, the car was driven away by Dashawn Boylan, who had been at DJ's Pub with defendant and three other friends. The five men had arrived at the pub in a car driven by Harry McBride. After Boylan drove away in Hotz's car, defendant, McBride, and the other two friends left the bar in the car driven by McBride and attempted to follow Boylan. They eventually caught up with the stolen car, which had stopped by the side of the road. Rameau had stopped his motorcycle near the stolen car. Defendant pulled a handgun from his clothing and, from the passenger side of the car driven by McBride, shot at Rameau four times through the open passenger window. Rameau then sped away on his

motorcycle. The men in the car driven by McBride followed the motorcycle, and as they were pursuing Rameau defendant again pointed the gun out of the passenger window and shot three more times at Rameau. According to the testimony of the other passengers in the McBride car, only defendant fired shots; neither Boylan nor any of the other men fired any shots.

Shortly after defendant fired the second round of shots at Rameau, the car driven by McBride caught up with the stolen car driven by Boylan and both cars stopped. Boylan and defendant removed stereo speakers from the trunk of the stolen car and put them in the trunk of the car driven by McBride. All of the men then left in the car driven by McBride, leaving the stolen car abandoned by the side of the road.

A few minutes later at approximately 1:55 a.m., police responding to a call about two or three blocks from where the shooting occurred found Rameau lying in a yard in front of a house about 20 feet from his motorcycle. Moments after police arrived, Rameau died as the result of a gunshot wound.

The next morning, defendant went to McBride's house and retrieved the stereo speakers that he and Boylan had taken from the stolen car. McBride testified that defendant told him that Rameau had died and asked McBride not to tell anyone about the incident. Later that day, defendant sold the speakers to a pawn shop, using a woman in the store to act as intermediary in the sale. The pawn shop employee conducting the transaction testified that he gave the woman a card commemorating the details of the transaction, then gave the money for the speakers to defendant and saw defendant put the money in his pocket. A video recording from the pawn shop shows defendant entering the shop with the speakers and being handed something by the employee. Police later searching the home of defendant's mother, where defendant was living, found a business card from the pawn shop with the details of the speaker transaction in defendant's bedroom.

While police were searching the home, defendant's mother told police that she owned two handguns and that they were located on the top shelf of her closet. Officers did not find any guns in that location, but instead found an empty green gun case lying open in defendant's bedroom. Police later found defendant's father in possession of the green gun case. In the case was one of the handguns registered to defendant's mother. The barrel of the gun had been removed, and neither defendant's mother nor his father had an explanation for the missing barrel. The police forensics examiner later testified that the gun found in the green gun case in the possession of defendant's father was the gun that had ejected six of the seven shell casings found by police in the area where defendant was reported to have shot at Rameau.

Defendant was charged with first-degree murder, felon-in-possession, and felony firearm. At trial, McBride and the other two passengers in the McBride car testified that defendant shot at Rameau numerous times that night. One of the passengers testified that the gun defendant fired was an army green Smith & Wesson; that witness testified that he recognized the gun as belonging to defendant's mother, and

> that he had known defendant to carry the gun and refer to the gun by the nickname of "Smitty." Another of the passengers in the McBride car testified that the gun was silver in color, and that a few days later he again saw defendant with a silver gun and that defendant removed the barrel from the gun and wrapped the barrel in tissue paper.
>
> Before trial, defendant appeared before the trial court and waived his right to a jury trial and elected to be tried by a judge. At the conclusion of the testimony by both parties, defendant also waived his right to testify, stating on the record that he understood his constitutional rights and was choosing not to testify. At the conclusion of the bench trial, the trial court found defendant guilty of all charges.
>
> Defendant thereafter moved for a new trial or, in the alternative, a *Ginther*[1] hearing, contending that defendant had not received effective assistance of counsel at trial. Defendant argued that defense counsel at trial had been ineffective because, among other reasons, he had (1) permitted defendant to waive his right to a jury trial when defendant mistakenly believed that the prosecutor had the ability to select a jury of only white jurors, and that (2) he had failed to advise defendant that if he waived his right to testify certain information would not be presented at trial. In response to defendant's motion, the trial court held a *Ginther* hearing to ascertain whether defendant had been denied effective assistance of counsel at trial. At the conclusion of the hearing, the trial court determined that defendant had not been denied effective assistance of counsel at trial and therefore denied defendant's motion for a new trial.
>
> [1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.972-974.)

Petitioner was represented both at his *Ginther* hearing, *People v. Ginther*, 212 N.W.2d 922 (1973),[1] and on his appeal to the Michigan Court of Appeals. His appeal to the Michigan Court of Appeals raised substantively the same issues he raised in his *Ginther* hearing and which he raises in this habeas petition (Appellant's Br., Mich. Ct. App., ECF No. 6-11, PageID.1043), as did his application for leave to appeal to the Michigan Supreme Court (Appl. Leave Appeal, Mich., ECF No. 6-12, PageID.1145, 1147).

[1] Under *Ginther*, the Michigan Supreme Court approved the process of a state court conducting an evidentiary hearing if a petitioner has raised a claim of ineffective assistance of counsel that requires the factual record be supplemented.

**II. AEDPA standard**

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel provided ineffective assistance on two grounds. First, Petitioner alleges that his trial counsel misled him into waiving his right to a trial by jury. Second, Petitioner alleges that his trial counsel failed to properly investigate and to present a substantial defense, principally by failing to advise Petitioner to testify in his own defense.

**A. Ineffective Assistance of Counsel Standard**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

**B. Waiver of Jury Trial**

Petitioner contends that his trial counsel provided ineffective assistance "because his attorney did not inform him that the prosecutor did not possess the power to eliminate all nonwhite prospective jurors from the jury" thus misleading Petitioner into waiving a jury trial. (Pet., ECF No. 1, PageID.22.)

A criminal defendant's right to trial by a jury of peers is "fundamental to the American scheme of justice." *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). "Trial by jury is the normal[,] and . . . the right of the accused to a trial by a constitutional jury" must be "jealously preserved." *Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970). A defendant may waive the right if four conditions are met: "(1) the waiver must be in writing; (2) the government must consent to the waiver; (3) the trial court must consent to the waiver; and (4) the defendant's waiver must be voluntary, knowing, and intelligent." *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007); *see also Patton*, 281 U.S. at 312. To be "voluntary, knowing, and intelligent," *Haliym*, 492 F.3d at 698, "the defendant must understand the choice he faces is to be judged by a jury composed of people from the community as opposed to having his guilt or innocence determined by a judge," *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (citing *Haliym*, 492 F.3d at 698). Further, the defendant must have "'sufficient awareness of the relevant circumstances and likely consequences.'" *Haliym*, 492 F.3d at 698 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Whether a waiver has been intelligent and knowing "depend[s] upon the unique circumstances of each case," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942), and "[a] petitioner bears the burden of proving

that his waiver of a jury trial was not knowing, voluntary, or intelligent." *Haliym*, 492 F.3d at 698 (citing *Sowell v. Bradshaw*, 472 F.3d 821, 832 (6th. Cir. 2004)).

Here, Petitioner argues that his trial counsel provided ineffective assistance when he failed to inform Petitioner that the prosecution could not eliminate non-white prospective jurors based on race alone, and, as a result, Petitioner's waiver of a trial by jury was not intelligent and knowing. Both the state trial court and Michigan Court of Appeals reviewed Petitioner's contention. Both state courts applied the *Strickland* framework. (*See Ginther* Hr'g Tr., ECF No. 6-9, PageID.928-934; *People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.974.) Both state courts determined that Petitioner failed to raise his concerns with his trial counsel and therefore could not demonstrate his trial counsel performed deficiently. The appeals court further determined that the weight of the evidence against Petitioner precluded a finding of prejudice.

Petitioner has not shown his trial counsel performed deficiently for failing to inform that prosecutors are precluded from eliminating potential jurors based on their race alone. The Michigan Court of Appeals found that "[t]here is no indication in the record that defense counsel knew that [Petitioner] held the mistaken belief that the prosecutor could exclude all non-white jurors." (*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.975.) The Michigan Court of Appeals further pointed to the fact that Petitioner never expressed any such concern during the jury waiver hearing. (*See id.*) Instead, Petitioner conceded during his *Ginther* testimony that his trial counsel informed him that, as an African American defendant, "a jury of your peers" would include "black people from your society that you live amongst." (*Ginther* Hr'g Tr. 06/03/2016, ECF No. 6-9, PageID.850-851.) To be sure, Petitioner alleges he had expressed some surprise at this description of a jury of peers. However, the record does not indicate that

Petitioner clearly shared his concern with his trial counsel that the prosecutor could systematically remove every non-white member of the prospective jury nor that trial counsel should have inferred any such concern. Consequently, Petitioner fails to show that counsel's performance fell below an objective standard of reasonableness, let alone that the state courts unreasonably applied *Strickland*'s first prong to reach the same conclusion.

Likewise, Petitioner fails to demonstrate *Strickland*'s prejudice prong. The Michigan Court of Appeals pointed to the considerable evidence the prosecution presented and concluded that the result of Petitioner's trial would not have been different had he been tried by a jury. (*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.975.) Specifically, the appeals court pointed to: (1) three eyewitnesses who testified that they saw Petitioner shoot toward the victim; (2) the shell casings found at the scene of the shooting had been cycled through a firearm registered to Petitioner's mother; (3) testimony that Petitioner frequently carried his mother's firearm; and (4) further testimony that Petitioner had nicknamed the firearm "Smitty." (*Id.*, PageID.975-976.)

Indeed, Petitioner has failed to show that he clearly would have elected to be tried by a jury. In a recorded jail visit between Petitioner and his brother prior to Petitioner's trial, Petitioner told his brother that he had elected a bench trial. Petitioner's brother asked who had made the decision—was it the judge, the defense attorney, or someone else. Petitioner asserted that the decision was his own. Petitioner's brother opposed the decision, asking whether it was too late to rescind and to proceed with a jury. In response, Petitioner lied, asserting that it was too late. Next, Petitioner "showed [his brother] every picture" from the discovery packet, which included provocative images of the victim, to explain why he had elected a bench trial over a jury trial. (*Ginther* Hr'g Tr. 06/03/2016, ECF No. 6-9, PageID.881-882.) Thus, the Michigan Court

of Appeals found that the record did not support Petitioner's contention and further that "the record indicates [Petitioner] knowingly, voluntarily, and intelligently waived his right to a jury trial." (*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.975.)

Petitioner has plainly failed to demonstrate that his trial counsel was deficient in a way that caused Petitioner to waive a jury trial, or that any alleged deficiency resulted in prejudice. For these reasons, the state courts' rejections of Petitioner's first ground for habeas relief are neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, I recommend the Court deny Petitioner's first ground for habeas relief.

**C. Waiver of Right to Testify**

Petitioner also contends that his trial counsel provided ineffective assistance "for failing to produce the only significant witness, [Petitioner,] whose testimony would have verified Petitioner's claim that although [sic] he was not the shooter, and that he had gotten out of the car before the shooting occurred." (Pet., ECF No. 1, PageID.27.)

Petitioner requests the Court give no deference to the state courts, asserting "that decisions of the Michigan lower courts here represent an unreasonable application of federal law, largely because it [sic] was based upon a factually erroneous premise which is clear from the record." (*Id.*, PageID.26.) However, it remains wholly a mystery what erroneous premise Petitioner believes the state courts relied upon much less why the Court should disregard the deference traditionally given on habeas review to the state courts. Consequently, I recommend the Court decline Petitioner's invitation and instead defer to the findings and reasoning of the state courts.

In a criminal trial, the protections afforded under the Constitution for "due process of law" provide that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense." *Holden v. Hardy*, 169 U.S. 366, 390-91 (1898). A criminal defendant's

right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52-53 & n.10 (1987)). The right can be waived by a defendant only if done so knowingly and intelligently. *Stover*, 474 F.3d at 908 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.")). The Supreme Court has determined that some waivers of fundamental rights are required to be taken on the record. However, while it remains advisable, "the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intelligently waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). To retain the right, "a defendant must 'alert the trial court' that he desires to testify" or that a disagreement with defense counsel exists. *Webber*, 208 F.3d 551 (quoting *Pelzer v. United States*, No. 96-1195, 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)).

Here, Petitioner argues that trial counsel provided ineffective assistance for failing to present a substantial defense. (Pet., ECF No. 1, PageID.26.) In particular, Petitioner asserts that:

> [w]hat the state court in this case failed to grasp is that it is a travesty of justice to incarcerate a defendant after forcing him to go to trial with an unprepared attorney, who refused to present important witnesses to support his defense, and refused to call Petitioner himself for the purpose of establishing his state of mind at the time of the shooting.

(*Id.*, PageID.32.) Yet, Petitioner's argument is contradicted by the record.

While Petitioner asserts that his counsel "refused to present important witnesses to support his defense," a careful review of the record, the only witness Petitioner specifically alleges his trial counsel refused to present was Petitioner himself. Moreover, the record suggests that trial

counsel did not *refuse* to call Petitioner but that Petitioner, after considering possible consequences, waived his right to testify in his own defense. The Michigan Court of Appeals, reviewed the pertinent section of Petitioner's trial transcript:

> *Trial counsel*: [Defendant], you understand you have a constitutional right to not testify and if you exercise that right that cannot be held, then used against that -
>
> *Defendant*: Yes.
>
> *Trial counsel*: - you understand that?
>
> *Defendant*: Yes, sir.
>
> *Trial counsel*: And [in] this particular case, ah, you reviewed the facts [and] you're electing not to testify in this particular case and you're standing on your constitutional right to remain silent and let the prosecution [prove your guilt] beyond a reasonable doubt.
>
> *Defendant*: Yes, sir.
>
> *Trial counsel*: OK.
>
> *Trial court*: All right. Thanks. [Defendant], you and [your trial counsel] have talked about this probably a number of times haven't ya?
>
> *Defendant*: Yes, sir.
>
> *Trial court*: And has he answered your questions about this?
>
> *Defendant*: Yes.
>
> *Trial court*: Has he given you his advice about what would be the better way to go?
>
> *Defendant*: Nah, he never really stated any advice about it.
>
> *Trial court*: He said it was your call?
>
> *Defendant*: Yes
>
> *Trial court*: Ok.
>
> *Defendant*: Right. Correct.
>
> *Trial Court*: And it's your decision to do it this way?
>
> *Defendant*: Yes, sir.

(*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.976-977.)

Notwithstanding Petitioner's clear waiver of his right to testify in his own defense, he alleges that his trial counsel should have *advised* Petitioner that he should testify because he

remained the only witness "whose testimony would have verified Petitioner's claim that [] he was not the shooter, and that he had gotten out of the car before the shooting occurred." (Pet., ECF No. 1, PageID.27.) Petitioner contends that trial counsel's omitted advice demonstrates deficient performance under *Strickland*. Yet, at his *Ginther* hearing, Petitioner conceded that despite meeting with trial counsel more than a dozen times before trial, he never told his trial counsel that he had been dropped off before the shooting occurred, and thus could not have been the shooter. (*See Ginther* Hr'g Tr. 06/03/2016, ECF No. 6-9, PageID.868.) To explain why he never told his trial counsel this crucial information, Petitioner testified "because [trial counsel] never asked." (*Id.*) Consequently, Petitioner failed to establish trial counsel was deficient for failing to advise Petitioner that he should testify.

Likewise, Petitioner fails to establish his trial counsel was deficient for "fail[ing] to investigate and present a substantial defense" more generally. (Pet., ECF No. 1, PageID.26.) His habeas petition notably omits any effective evidence or defense, beyond Petitioner's testimony, that trial counsel should have presented. Petitioner simply alleges that his trial counsel "offered a flawed defense." (Pet., ECF No. 1, PageID.30.) But the Michigan Court of Appeals disagreed. In particular, the appeals court pointed to counsel's attacks on the credibility of the prosecution's eyewitnesses and counsel's arguments that could have reduced the specific offense in the event Petitioner was convicted. (*People v. Gee*, No. 326634 (Mich. Ct. App. Mar. 14, 2017), ECF No. 6-11, PageID.977.) Thus, Petitioner failed to establish his trial counsel was deficient for failing to investigate and present a substantial defense.

Moreover, for the reasons described both above in Part B and in the court of appeals' opinion, Petitioner has failed to satisfy the prejudice prong under *Strickland*. In light of

the considerable weight of evidence against him at trial, Petitioner has not established that the outcome of his trial would have been different had he testified.

Petitioner has plainly failed to demonstrate that his trial counsel was deficient in a way that caused Petitioner to waive his right to testify or that trial counsel's defense was objectively unreasonable. Further, Petitioner has not demonstrated that any alleged deficiency resulted in prejudice. For these reasons, the state courts' rejections of Petitioner's second ground for habeas relief are neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, I recommend the Court deny Petitioner's second ground for habeas relief.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: March 27, 2020

/s/ Ray Kent
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).